EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
GREGORY A. OTT
Deputy Attorney General
ANN P. WATHEN, State Bar No. 189314
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5972
 Fax:  (415) 703-1234
 Email:  Ann.Wathen@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RONNELL RAY HILL,** | C 07-3229 JSW (PR) |
| Petitioner, | |
| v. | |
| **V.M. ALMAGER, Warden,** | |
| Respondent. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

1

**TABLE OF CONTENTS**

2

**Page**

3  STATEMENT OF THE CASE ........................................................... 1

4  STATEMENT OF FACTS ............................................................... 2

5  ARGUMENT ......................................................................... 4

6     I.     **STANDARD OF REVIEW ON THE MERITS** ............................. 4

7     II.    **PETITIONER'S TRIAL COUNSEL RENDERED EFFECTIVE**
8            **ASSISTANCE** ..................................................... 5

         A.   Standard Of Review ......................................... 6
9
         B.   Petitioner's Trial Counsel Rendered Effective Assistance ...... 6
10
              1.   Viable Defense ....................................... 6
11
              2.   Defense Investigator ................................. 8
12
              3.   Expert Witness ...................................... 10
13
              4.   Exclusion Of Jane Doe's Parents From The Courtroom ... 11
14
              5.   Cross-examination Of Jane Doe And Detective Balesteri ... 12
15
         C.   There Was No Prejudice ..................................... 14
16
   III.   **PETITIONER'S CONSECUTIVE SENTENCES DID NOT**
17        **VIOLATE HIS RIGHTS UNDER THE FIFTH, SIXTH, AND**
      **FOURTEENTH AMENDMENTS** ................................... 16
18
         A.   Relevant Background ....................................... 16
19
         B.   The California Courts Did Not Unreasonably Apply United States
20              Supreme Court Precedent In Denying Petitioner's Claim ...... 18

21           C.   There Was No Prejudice ..................................... 20

22  CONCLUSION ....................................................................... 23

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2
**Page**

3
**Cases**

4
*Acha v. United States*
910 F.2d 28 (1st Cir. 1990)                                    11

5

*Apprendi v. New Jersey*
6
530 U.S. 466
120 S. Ct. 2348
7
147 L. Ed. 2d 435 (2000)                                    19, 20

8
*Babbitt v. Calderon*
151 F.3d 1170 (9th Cir. 1998)                                    6

9

*Bains v. Cambra*
10
204 F.3d 964 (9th Cir. 2000)                                    14

11
*Bell v. Lockhart*
741 F.2d 1105 (8th Cir. 1984)                                    12

12

*Blakely v. Washington*
13
542 U.S. 296 (2004)                                    17, 19, 20

14
*Boag v. Raines*
769 F.2d 1341 (9th Cir. 1985)                                    12

15

*Brecht v. Abrahamson*
16
507 U.S. 619 (1993)                                    5, 14, 20, 22

17
*Bullock v. Carver*
296 F.3d 1036 (10th Cir. 2002)                                    7

18

*Chapman v. California*
19
386 U.S. 18 (1967)                                    14, 20

20
*Duncan v. Henry*
513 U.S. 364 (1995)                                    14

21

*Early v. Packer*
22
537 U.S 3 (2002)                                    4

23
*Edwards v. LaMarque*
475  F.3d 1121 (9th Cir. 2007)                                    7

24

*Fry v. Pliler*
25
___ U.S. ___
127 S.Ct. 2321
26
168 L.Ed. 2d 16 (2007)                                    5, 14, 20

27
*Hall v. State*
823 So.2d 757 (Fla. 2002)                                    20

28

**TABLE OF AUTHORITIES** (continued)

**Page**

*Henry v. Estelle*
33 F.3d 1037 (9th Cir. 1993) .......................................... 14, 20

*Himes v. Thompson*
336 F.3d 848 (9th Cir. 2003) .......................................... 5

*James v. Borg*
24 F.3d 20 (9th Cir. 1994) ............................................. 11

*McMillan v. Penssylvania*
477 U.S. 79 (1986) ...................................................... 19

*Medley v. Runnels*
223 F.3d 976 (9th Cir. 2007) .......................................... 5

*Moore v. Deputy Commissioners of Sci-Huntington*
946 F.2d 236 (3d Cir. 1991) ........................................... 7

*People v. Black*
35 Cal.4th 1238 (*Black I*) (2005) .................................... 17-19

*People v. Cunningham*
25 Cal.4th 926 (2001) .................................................. 7, 18-20

*People v. Holloway*
33 Cal.4th 96 (2004) ................................................... 12

*People v. Osband*
13 Cal.4th 622 (1996) .................................................. 22

*People v. Wagener*
752 N.E.2d 430 (Ill. 2001) ............................................ 20

*People v. Willingham*
271 Cal.App.2d 562 (1969) ............................................. 12

*Pirtle v. Morgan*
313 F.3d 1160 (9th Cir. 2002) ......................................... 5, 7

*Robinson v. Ignacio*
360 F.3d 1044 (9th Cir. 2004) ......................................... 4

*Sanders v. Ratelle*
21 F.3d 1446 (9th Cir. 1994) .......................................... 9, 10

*State v. Bramlett*
41 P.3d 796 (Kan. 2002) ............................................... 20

*State v. Cubias*
120 P. 3d 929 (Wash. 2005) ............................................ 20

**TABLE OF AUTHORITIES  (continued)**

**Page**

*State v. Higgins*
821 A.2d 964 (N.H. 2003) ............ 20

*State v. Kahapea*
141 P. 3d 440 (Haw. 2006) ............ 20

*Strickland v. Washington*
466 U.S. 668 (1984) ............ 6, 7, 9, 10

*United States  v. Quintero-Barraza*
78 F.3d 1344 (1996) ............ 11

*United States v. Angle*
254 F.3d 514 (4th Cir. 2001) ............ 20

*United States v. Booker*
125 S.Ct. 750 (2005) ............ 19

*United States v. Buckland*
289 F.3d 558 (9th Cir. 2002) ............ 19

*United States v. Campbell*
279 F.3d 392 (6th Cir. 2002) ............ 20

*United States v. Chorin*
322 F.3d 274 (3rd Cir. 2003) ............ 20

*United States v. Feola*
275 F.3d 216 (2d Cir. 2001) ............ 20

*United States v. Harrison*
340 F.3d 497 (8th Cir. 2003) ............ 20

*United States v. Hernandez*
330 F.3d 964 (7th Cir. 2003) ............ 20

*United States v. Hicks*
389 F.3d 514 (5th Cir. 2004) ............ 20

*United States v. Lafayette*
337 F.3d 1043 (D.C. Cir. 2003) ............ 20

*United States v. Lott*
310 F.3d 1231 (10th Cir. 2002) ............ 20

*United States v. Neresian*
824 F.2d 1294 (2d Cir. 1987) ............ 9, 10

*United States v. Pressley*
345 F.3d 1205 (11th Cir. 2003) ............ 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES  (continued)**

Page

*United States v. White*
240 F. 3d  127 (2d Cir. 2001)                                    20

*Washington v. Recuenco*
548 U.S. 212
126 S. Ct. 2546
165 L.Ed. 2d 466 (2006)                                         20

*Williams v. Taylor*
529 U.S. 362 (2000)                                          4, 6

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                              4

*Ylst v. Nunnemaker*
501 U.S. 797 (1991)                                             4


**Constitutional Provisions**

United States Constitution
     Fifth Amendment                                       2
     Sixth Amendment                                2, 5, 18
     Fourteenth Amendment                                  2


**Statutes**

California Evidence Code
     § 777 (a)                                            12

California Penal Code
     § 166 (c)(1)                                          2
     § 236/237                                             1
     § 245 (a)(1)                                          1
     § 262 (a)                                             1
     § 273.5 (a)                                           1
     § 286 (c)(2)                                          1
     § 288a (c)(2)                                         1
     § 289 (a)(1)                                          1
     § 422                                                 1

United States Code, Title 28
     § 2254 (d)                                      4, 5, 16
     § 2254 (d)                                            4
     § 2254 (e)(1)                                         4


**Other Authorities**

AEDPA                                                           5

1   EDMUND G. BROWN JR.
Attorney General of the State of California
2   DANE R. GILLETTE
Chief Assistant Attorney General
3   GERALD A. ENGLER
Senior Assistant Attorney General
4   GREGORY A. OTT
Deputy Attorney General
5   ANN P. WATHEN, State Bar No. 189314
Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5972
Fax:  (415) 703-1234
8    Email:  Ann.Wathen@doj.ca.gov

9   Attorneys for Respondent

10          IN THE UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13   **RONNELL RAY HILL,**               C 07-3229 JSW (PR)

14                  Petitioner,   **MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF ANSWER TO
PETITION FOR WRIT OF
HABEAS CORPUS**

15      **v.**

16   **V.M. ALMAGER, Warden,**

17                 Respondent.

18

19              **STATEMENT OF THE CASE**

20       On April 21, 2004, following a jury trial in Monterey County Superior Court, petitioner

21   was convicted of four counts of inflicting corporal injury on a spouse (Cal. Penal Code[1] § 273.5(a)),

22   three counts of aggravated assault (§ 245(a)(1)), forcible oral copulation (§ 288a(c)(2)), spousal rape

23   (§ 262(a)), forcible object penetration (§ 289(a)(1)), forcible sodomy (§ 286 (c)(2)), two counts of

24   making criminal threats (§ 422), false imprisonment (§§ 236/237), and four misdemeanor counts of

25

26

27   ――――――――――――――――

28        1.  All further statutory references are to the California Penal Code unless otherwise
indicated.

criminal contempt/disobedience of a protective order (§ 166(c)(1)). CT 314-16, 318-40, 486.[2]    On April 22, 2004, in a bifurcated proceeding, the trial court found the two prior strike convictions true. CT 316; RT 1023-24. On July 1, 2004, the trial court sentenced petitioner to 29 years to life on count two, 25 years to life on count three, 30 years to life on count five, and four 25 years to life terms on counts nine through twelve. The court ordered that the terms run consecutively. CT 369-75, 392-95.

On February 1, 2005, petitioner appealed his conviction to the California Court of Appeal (H027710). Exh. 3. On April 13, 2005, the People filed the respondent's brief. Exh. 4. On December 16, 2005, the California Court of Appeal affirmed the judgment of conviction. Exh. 5.

On January 20, 2006, petitioner filed a petition for review in the California Supreme Court (S140531), which was denied on February 22, 2006. Exhs. 6, 7. On October 4, 2006, petitioner filed a state habeas petition in the California Supreme Court (S147089), which was denied on April 18, 2007. Exhs. 8, 9.

On June 6, 2007, petitioner timely filed the instant petition in this Court, claiming that: (1) his trial counsel had rendered ineffective assistance of counsel in violation of his Sixth Amendment right to counsel; and (2) his upper term and consecutive sentence violated his rights under the Fifth, Sixth, and Fourteenth Amendments.[3]    Petition at 6. On October 30, 2007, this Court issued an order to show cause, directing respondent to respond to these two claims. 10/30/07 OSC.

## STATEMENT OF FACTS[4]

Defendant's wife returned home around 10 p.m on Tuesday evening, February 4,

---

2. Exhibit references are to the state records lodged with the Answer. References to "CT" and "RT" are to the Reporter's Transcript and Clerk's Transcript of state proceedings, Exhs. 1 and 2, respectively.

3. Petitioner also raised a third claim pertaining to an error of state law, which this Court determined was not cognizable in federal habeas corpus. 10/30/07 Order to Show Cause (OSC).

4. The Statement of Facts is quoted from the opinion of the California Court of Appeal. Exh. 5 at 1-4. Respondent's statement of facts on direct appeal, with record citations, appears in Exhibit 4 at 2-9.

2003, after being out and was confronted by defendant in the parking lot of their apartment complex. Very angry, defendant accused his wife of having an affair. An argument ensued, continuing inside their apartment. During the argument, defendant ripped the crotch of her stockings and pulled them down. He inserted his fingers inside her vagina and asked her who she had been having sex with. Defendant then hit the side of her face, injuring her ear and causing her to fall in pain. Defendant proceeded to strangle her with his hands and a scarf until she began to shake and lost consciousness. Later that night, when she regained consciousness, defendant threw a medicine bottle at her, hitting her in the face.

Also that night, defendant forced his wife to engage in a number of sexual acts, including intercourse, oral copulation, sodomy and forcible object penetration. Defendant's wife testified that over the course of their seven-year relationship, they had sometimes had fights that were followed by consensual sexual intercourse. However, she testified that on this occasion she did not consent, but had participated because she was afraid defendant would kill her and she felt she had no choice.

Some time later, the defendant made his wife accompany him to purchase drugs. When they were out, she did not run away because she was afraid of what he would do if he caught her; and when in the apartment she could neither escape nor call for help because he locked her in and disabled all of the phones.

Over the course of the four-day imprisonment, defendant chocked his wife three more times. During one of these incidents, defendant told his wife he would kill her and get rid of her body and she blacked out again, regaining consciousness only to see defendant searching for lighter fluid. He told her the lighter fluid was to kill her and burn her. When he couldn't find lighter fluid, he threw bleach on her and tried to light her on fire, but the bleach on her clothing did not ignite. Defendant then grabbed a knife and stabbed his wife 40 or 50 times leaving wounds which healed without the need for stitches, although some left scars.

Saturday afternoon, when defendant left the apartment, he left the door unlocked and his wife was able to escape and run for help. After police arrived, they observed her injuries and took a report. They took the defendant's wife to the hospital where she received treatment and underwent a sexual assault exam. The sexual assault nurse concluded that her injuries were consistent with her version of events.

Shortly thereafter, the defendant's wife sought and obtained a restraining order against defendant precluding him from having any contact with her. Despite the order, defendant wrote five letters to his wife and called her once on the telephone.

Defendant was arrested and charged . . . . [¶] At trial, defendant testified and contradicted his wife's version of events. He denied ever confining her, threatening her or assaulting her. He claimed that any scuffles they had were a result of him trying to defend himself from her drug-induced delusional attacks. [¶] . . . Defendant admitted that he had pleaded guilty to hitting his wife in 2001 and also admitted that he had two prior felony convictions. The trial court . . . [in a bifurcated proceeding] found the two prior strike convictions to be true . . . .

Exh. 5 at 2-5, footnote omitted.

///

///

1

**ARGUMENT**

2

**I.**

3

**STANDARD OF REVIEW ON THE MERITS**

4          A federal court may grant a writ of habeas corpus to a state prisoner only if the state

5   court's rulings "resulted in a decision that was contrary to, or involved an unreasonable application

6   of, clearly established Federal law, as determined by the Supreme Court of the United States, or

7   were "based on an unreasonable determination of the facts in light of the evidence presented" in the

8   state courts.  28 U.S.C. § 2254(d).  Under the "contrary to" clause, a state court's decision is

9   contrary to federal law if it "'contradicts the governing law set forth in our cases' or if it 'confronts

10  a set of facts that are materially indistinguishable from a decision of this Court and nevertheless

11  arrives at a result different from our precedent.'"  *See Early v. Packer*, 537 U.S 3, 8 (2002), *quoting*

12  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  That test does "not require citation of our cases

13  – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the

14  result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. at 8.  The ultimate

15  controlling authority is the holding of the Supreme Court's cases at the time of the relevant state-

16  court decision, not the dicta.  *Williams v. Taylor,* 529 U.S. at 412.  The state courts are presumed to

17  "know and follow the law," and the standard for evaluating state-court rulings, which are given the

18  "benefit of the doubt," is "highly deferential."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per

19  curiam).  In order to warrant habeas relief, the state court's application of clearly established federal

20  law must be not merely erroneous or incorrect but "objectively unreasonable."  *Williams v. Taylor*,

21  529 U.S. at 409; *see also Woodford v. Visciotti*, 537 U.S. at 25.  It is the habeas petitioner's burden

22  to make that showing.  *Id.*  The state court's factual determinations are presumed correct unless

23  rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

24          To determine whether a petitioner is entitled to habeas relief under § 2254(d), the federal

25  court must look to the last reasoned state court decision.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055

26  (9th Cir. 2004).  Where the state's highest court did not provide a reasoned decision, the district

27  court "looks through" to the underlying appellate court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797,

28  801-06 (1991).  If the state court decided the petitioner's claims on the merits, but did not provide

1  any reasoning for its decision, the federal habeas court must independently review the record to

2  determine whether habeas corpus relief is available to the petitioner under § 2254(d).  *Himes v.*

3  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  If the state court denied the petitioner's claims on

4  procedural grounds or did not decide the petitioner's claims on their merits, the deferential standard

5  of the AEDPA does not apply and the federal court must review the petitioner's claims de novo.

6  *Medley v. Runnels,* 223 F.3d 976, 863 n. 3 (9th Cir. 2007); *Pirtle v. Morgan*, 313 F.3d 1160, 1167

7  (9th Cir. 2002).

8        Furthermore, even if the state court's ruling is contrary to or an unreasonable application

9  of Supreme Court precedent, that error justifies overturning the conviction only if the error had a

10 "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v.*

11 *Abrahamson*, 507 U.S. 619, 637 (1993).  The *Brecht* standard applies to all § 2254 cases, regardless

12 of the type of harmless error review conducted by the state courts.  *Fry v. Pliler*, ___ U.S. ___, 127

13 S.Ct. 2321, 2327; 168 L.Ed. 2d 16, 23 (2007).

14                                         **II.**

15 **PETITIONER'S  TRIAL  COUNSEL  RENDERED  EFFECTIVE**
   **ASSISTANCE**

16

17        Petitioner contends that his trial counsel rendered ineffective assistance in violation of his

18 Sixth Amendment right to counsel by failing to: (1) prepare or present a viable defense; (2) call

19 Defense Investigator Garry St. Clair as a witness to impeach Jane Doe; (3) call an expert witness to

20 refute the SART (Sexual Assault Response Team) exam evidence and to testify about the lack of

21 evidence pertaining to fingerprints on the knife, residue on the bottle stopper, and blood tests; (4)

22 file a motion to exclude the victim's parents from the courtroom; and (5) effectively cross-examine

23 Jane Doe and Detective Balesteri, two prosecution witnesses.  Petition at 6-6a.

24        When petitioner raised the foregoing claims in the habeas petition that he filed with the

25 California Supreme Court, Exh. 8, the Court summarily denied the petition, Exh. 9.  Accordingly,

26 this Court must review petitioner's claims of ineffective assistance of counsel de novo.  *Medley v.*

27 *Runnels,* 506 F.3d at 863 n. 3; *Pirtle v. Morgan*, 313 F.3d at 1167.  Here, as discussed in detail

28 below, *see* Arg. II.B, *infra*, petitioner was not denied his right to the effective assistance of counsel.

1

### A.    Standard Of Review

2        In *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the Supreme Court set forth a two-
3    prong test to evaluate a claim of ineffective assistance of counsel.  Under the first prong, "the
4    defendant must show that counsel's representation fell below an objective standard of
5    reasonableness." *Id.* at 688.  When assessing the performance of defense counsel under the first
6    prong of the *Strickland* test, a reviewing court must be "highly deferential" and "indulge a strong
7    presumption that counsel's conduct falls within the wide range of reasonable professional
8    assistance." *Id.* at 689.  The reviewing court must not second-guess defense counsel's trial strategy,
9    keeping in mind that "[e]ven the best criminal defense attorneys would not defend a particular client
10   in the same way." *Id.*  The relevant inquiry is therefore not what defense counsel could have done,
11   but rather whether the choices made by defense counsel were reasonable.  *See Babbitt v. Calderon*,
12   151 F.3d 1170, 1173 (9th Cir. 1998).  There is a "wide range of reasonable professional conduct,"
13   and a "strong presumption" that counsel's conduct fell within that range.  *Strickland*, 466 U.S. at
14   689.

15       The second prong of the *Strickland* test is no less strict.  The petitioner bears the "highly
16   demanding" and "heavy burden" of establishing actual prejudice.  *Williams v. Taylor*, 529 U.S. at
17   394.  A defendant must carry this burden by means of "affirmative" proof.  *Strickland*, 466 U.S. at
18   693.  It requires showing "a reasonable probability that but for counsel's unprofessional errors, the
19   result . . . would have been different." *Id.* at 694.   "A reasonable probability is a probability
20   sufficient to undermine confidence in the outcome." *Id.*  It is insufficient to show only that the
21   errors had some conceivable effect on the outcome of the proceeding, because virtually every act
22   or omission of counsel would meet that test. *Id.* at 693.  If the absence of prejudice is clear, a court
23   should dispose of the ineffectiveness claim without inquiring into the performance prong. *Id.* at 692.

24   ### B.    Petitioner's Trial Counsel Rendered Effective Assistance

25       Petitioner claims that his trial counsel rendered ineffective assistance of counsel in various
26   ways.  Petition at 6.  As discussed in detail below, petitioner's claims are meritless.

27   ### 1.    Viable Defense

28       Initially, petitioner claims that his counsel rendered ineffective assistance because he

Memorandum of Points and Authorities - *Hill v. Almager* - C 07-3229 JSW (PR)

1  failed to prepare and present a viable defense.  Petitioner complains that his counsel misled him by

2  presenting a "rough sex defense."  He further claims that his counsel should have presented evidence

3  that Jane Doe started the altercation between them by hitting him in the head with a bookend

4  because she was jealous of petitioner's mistress and angry about his infidelity.  Petition at 6.

5         There are many different reasonable ways four counsel to defend a case.  *Strickland,* 466

6  U.S. at 689; *Edwards v. LaMarque*, 475  F.3d 1121, 1128 (9th Cir. 2007) (en banc); *Moore v.*

7  *Deputy Commissioners of Sci-Huntington*, 946 F.2d 236 (3d Cir. 1991).  Generally, trial counsel

8  does not render ineffective assistance by choosing one or more defense theories over another.

9  *People v. Cunningham,* 25 Cal.4th 926, 1007 (2001).  The decision whether to raise a particular

10  defense is related to trial strategy and informed "strategic or tactical decisions on the part of counsel

11  are presumed correct, unless they were completely unreasonable, not merely wrong."  *Bullock v.*

12  *Carver,* 296 F.3d 1036, 1047 (10th Cir. 2002); *see, e.g., Pirtle v. Morgan*, 313 F.3d 1160, 1196-73

13  (9th Cir. 2002) (finding that defense counsel's performance was deficient because he did not assert

14  a diminished capacity defense).

15         Here, petitioner's counsel acted reasonably in defending petitioner on multiple fronts in

16  the manner that he did.  In defending petitioner on count two and the accompanying special

17  allegation (inflicting corporal injury on a spouse and personally inflicting great bodily injury under

18  circumstances involving domestic violence), CT 288, petitioner's counsel did as exactly as petitioner

19  suggested: he raised a self-defense claim.  Specifically, petitioner's counsel elicited petitioner's

20  testimony that while he was arguing with Jane Doe regarding her whereabouts on the evening of

21  February 4, 2003, Jane Doe hit him in the head with a bookend and that he hit her back in self-

22  defense. RT 623-25.  Petitioner's counsel also introduced evidence of Jane Doe's jealousy of

23  Miriam, petitioner's mistress, and her anger about petitioner's infidelity.  In that regard, Jane Doe

24  testified that she knew Miriam was involved with her husband, was angry about it, and yelled at

25  petitioner about his affair with Miriam during the four-day ordeal.   RT 513-14, 516, 526.

26  Petitioner's counsel subsequently used the evidence to argue to the jury that petitioner had acted in

27  self-defense, RT 806, 808, and ensured that the trial court gave the jury proper instructions regarding

28  self-defense.  CT 438-40.

Memorandum of Points and Authorities - *Hill v. Almager* - C 07-3229 JSW (PR)

1    In defending petitioner on the sexual assault counts, CT 291-94, petitioner's counsel told

2    the jury that Jane Doe had consented to all of the sex acts. RT 804-05, 810. This was a reasonable

3    way to defend against those charges in light of petitioner's and Jane Doe's testimony. Petitioner

4    testified that he and Jane Doe had had consensual sex multiple times over the four-day period, and

5    when he attempted to have sex with her on February 7, but she indicated that she did not want to,

6    he stopped. RT 649. Petitioner's counsel also elicited Jane Doe's testimony that, in the past, she

7    had had "make-up sex" with petitioner after a fight and would normally have sex with petitioner if

8    he wanted to have sex. RT 509. Petitioner's counsel also impeached Jane Doe with her preliminary

9    hearing testimony in which she stated that she had "participated" in the sexual acts with petitioner

10   over the four-day period. RT 510. In light of the foregoing, it is evident that petitioner's counsel

11   acted reasonably in defending petitioner the way that he did against the various charges.

12        **2.    Defense Investigator**

13        Next, petitioner claims that his counsel's performance was deficient because he failed to

14   call Defense Investigator St. Clair as a witness to impeach Jane Doe. Prior to trial, Investigator St.

15   Clair interviewed Jane Doe. Exhs. 44-46, 60-61, 63 attached to Exh. 8. During one of the

16   interviews, Jane Doe told the investigator that she "might have had sex" with petitioner the night

17   after the stabbing and "that [wa]s when he put the Terra Cotta bottle stopper inside [her] rectum, and

18   then took [it] out." Exh. 44 attached to Exh. 8. She also told the investigator that her prior husband

19   and boyfriend had been abusive and that she had filed a complaint against her boyfriend for assault

20   and battery. In a subsequent interview, Jane Doe denied that she had made such statements to the

21   investigator. Exhs. 60, 61 attached to Exh. 8. Jane Doe admitted to the investigator that she had

22   used marijuana and had used methamphetamine with petitioner on one occasion. She also stated

23   that petitioner had made her "do crank" during the four-day ordeal. Exhs. 60, 61, 63 attached to

24   Exh. 8. In addition, Jane Doe told the investigator that she did not want her parents to learn about

25   things she had "done wrong in her past." Exh. 63 attached to Exh. 8. Jane Doe also told the

26   investigator that petitioner had lied about her having a criminal history. Exh. 63 attached to Exh.

27   8.

28        Counsel's decision not to call a particular witness to testify must be informed by an

Memorandum of Points and Authorities - *Hill v. Almager* - C 07-3229 JSW (PR)

8

1   adequate investigation in order to be deemed a reasonable, tactical decision that will be upheld under

2   the *Strickland* standard. *Sanders v. Ratelle,* 21 F.3d 1446, 1456-57 (9th Cir. 1994). Generally, a

3   petitioner's complaints about defense counsel's failure to call certain witnesses at trial are not

4   favored under habeas corpus review. *United States v. Neresian*, 824 F.2d 1294, 1321 (2d Cir. 1987).

5          Here, petitioner's counsel acted reasonably by not calling Investigator St. Clair as a

6   witness. Several statements which Jane Doe made to the investigator were inadmissible. For

7   example, whether Jane Doe's prior husband or boyfriend hit her was irrelevant as it had no tendency

8   to prove whether *petitioner* had abused Jane Doe. Such evidence would have had a danger of

9   confusing the jury about the issues before it. Exh. 60 attached to Exh. 8; *see* RT 517 (the trial

10  court's decision to sustain the objection to defense counsel's attempt to introduce evidence that Jane

11  Doe had been abused by other men). Furthermore, Jane Doe's admission to the investigator that she

12  had used drugs constituted inadmissible evidence as it was redundant to Jane Doe's trial testimony

13  on the same subject. *See, e.g.,* RT 339 (Jane Doe's admission that she had used drugs when

14  petitioner gave them to her), 522-23 (Jane Doe's admission that she had used drugs five years ago),

15  340-41, 529 (Jane Doe's testimony that petitioner gave her crack cocaine and she used the drug once

16  during the four-day ordeal to ease her pain). Jane Doe's statement to the investigator about not

17  wanting her parents to know about the things she had done wrong in the past (Exh. 63 attached to

18  Exh. 8) was also cumulative evidence. At trial, Jane Doe insinuated that she did not want her

19  minister father to know about her past drug usage, adding that her "father loves [her] regardless."

20  RT 523.

21         Other statements made by Jane Doe to the investigator had little or no impeachment value.

22  For example, Jane Doe's statement that she might have had sex with petitioner did little to impeach

23  Jane Doe as she made no indication at that time whether the sex was consensual. In addition, Jane

24  Doe tied the sexual intercourse incident to the forcible object penetration incident, making it

25  inferrable that she did not consent to either act, a statement that was consistent with her trial

26  testimony. Exh. 44 attached to Exh. 8. There was also no evidence that Jane Doe had committed

27  any prior offenses which could have been used for impeachment purposes and her statement to the

28  investigator that petitioner had lied about her having a criminal past (Exh. 63 attached to Exh. 8) was

1  consistent with that fact.  Also, Jane Doe's statements to the investigator regarding her limited drug

2  use was consistent with her trial testimony and could not have been used to impeach her.  RT 339-

3  41, 522-23, 529.  The fact that Jane Doe later recanted her statements about having been abused by

4  her prior boyfriend and husband had some impeachment value, but undoubtedly would not have

5  been admitted for the reason that such evidence had a danger of prolonging the trial with mini trials

6  with issues that were marginally relevant, if at all, and posed a danger of confusing the jury.  Based

7  on the foregoing, it is evident that petitioner's counsel acted reasonably by not calling the defense

8  investigator as a witness.

9      **3.  Expert Witness**

10      Petitioner also claims that his counsel rendered ineffective assistance because he failed

11  to call an expert witness:  to refute the evidence regarding the SART exam; to testify that no

12  fingerprints were ever obtained from the knives collected at the apartment; to testify that the blood

13  obtained from the scene was never tested to determine whose blood it was; and to testify that the

14  bottle stopper had never been tested to prove that it had been inserted into Jane Doe's rectum.

15      As indicated above, counsel's decision not to call a particular witness to testify must be

16  informed by an adequate investigation in order to be deemed a reasonable, tactical decision that will

17  be upheld under the *Strickland* standard.  *Sanders v. Ratelle,* 21 F.3d at 1456-57.  Generally, a

18  petitioner's complaints about his counsel's failure to call particular witnesses at trial are not favored

19  under habeas corpus review.  *United States v. Neresian*, 824 F.2d at 1321.

20      Here, petitioner's counsel acted reasonably by not calling an expert witness.  First,

21  petitioner does not explain how an expert would have been able to refute the powerful medical

22  evidence, including the photographs, documenting Jane Doe's various injuries.  5 RT 320-22, 574-

23  78.  Moreover, petitioner's counsel did elicit testimony favorable to the defense during his cross-

24  examination of the SART nurse.  Specifically, petitioner's counsel elicited the SART nurse's

25  testimony that Jane Doe had no injuries in her vagina or cervix area, and that the one injury in Jane

26  Doe's genital area—the abrasion on the posterior fourchette—could have happened during a sexual

27  assault *or* consensual sex.  RT 583.  The SART nurse also testified that Jane Doe had reported that

28  petitioner had strangled her with one hand and a neck tie (as opposed to two hands and a scarf, RT

Memorandum of Points and Authorities - *Hill v. Almager* - C 07-3229 JSW (PR)

272, 313), and that she (the nurse) had heard of couples engaging in consensual sex while using an item to partially asphyxiate a partner during sex.  RT 584-86.

Second, there was little doubt whose blood had been found in the apartment.  After the four-day ordeal, Jane Doe was treated at the hospital for numerous injuries, including her bloody ear and gaping wounds which were consistent with her claim of having been stabbed multiple times. RT 283-90, 320, 329, 531, 571, 574.   Petitioner also admitted that he hit had Jane Doe in the ear and stabbed her (at least, inadvertently).  RT 624, 632, 640, 642, 652, 656, 679.   Petitioner never claimed he had been stabbed, RT 601, 637-40, 656, or that he had bled when Jane Doe allegedly hit him in the head.  RT 624.  Moreover, when the police arrested petitioner the day after the ordeal ended, he had no visible injuries on his body other than some superficial scratches.  RT 599-601.

Third, the lack of fingerprint evidence added nothing to petitioner's defense.  There was no dispute that petitioner had used a knife to stab Jane Doe.  Jane Doe testified that petitioner had repeatedly stabbed her.  RT 318, 320.  Petitioner admitted he had stabbed Jane Doe and merely claimed that he had accidentally done so while they were wrestling with the knife.  RT 640, 652, 656, 664.  Petitioner never claimed that Jane Doe had stabbed him, and as indicated above, he had no wounds that would have supported such a claim if he had made it.  RT 599-600, 637-40.  Thus, whether Jane Doe's, petitioner's, or no fingerprints were on the knife was a non-issue for the jury.

Lastly, petitioner's counsel acted reasonably by not calling an expert to testify that the bottle stopper had never been tested.  There was no need for an expert to testify about the lack of evidence in that regard as that was more than apparent to the jury.  The prosecutor never introduced the bottle stopper or any test results during the trial, and petitioner's counsel, without objection, highlighted this fact for the jury during his closing argument.  RT 811.  Based on the foregoing, it is evident that petitioner's counsel acted reasonably by not calling an expert witness.

### 4.    Exclusion Of Jane Doe's Parents From The Courtroom

Petitioner's claim that his counsel rendered ineffective assistance by failing to file a motion to exclude Jane Doe's parents from the courtroom because it tainted her testimony, is without merit.  Defense counsel's failure to make a motion does not constitute ineffectiveness if making the motion would have been futile. *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994).  There

is no requirement that defense counsel bring meritless motions on behalf of his client. *United States v. Quintero-Barraza,* 78 F.3d 1344, 1349 (1996); *see Acha v. United States,* 910 F.2d 28, 32 (1st Cir. 1990) (trial counsel is not obligated to raise meritless claims and the failure to do so is not ineffective assistance of counsel); *Boag v. Raines,* 769 F.2d 1341, 1344 (9th Cir. 1985) (a defense counsel's failure to make a meritless argument does not constitute ineffectiveness).

Here, a motion to exclude Jane Doe's parents from the courtroom would have been futile. Under California law, a trial court has discretion to exclude from the courtroom any witness not at the time testifying so that such witness cannot hear the other witnesses' testimony. Cal. Evid. Code § 777(a); *People v. Willingham*, 271 Cal.App.2d 562, 571 (1969). A trial court also has the discretion to exclude a disruptive spectator from the courtroom. *People v. Holloway*, 33 Cal.4th 96, 148 (2004). Jane Doe's parents did not fall into either category. Rather, they were spectators (not witnesses) in the courtroom who were there to support their daughter and they did nothing to disrupt the proceedings. Thus, there was no basis to exclude them and petitioner's counsel did not perform deficiently by failing to file such a futile motion.

Even assuming, arguendo, that such a motion would have been successful, petitioner's counsel made a reasonable tactical decision not to make such a motion. Although there was some evidence that Jane Doe had given evasive testimony about her past drug usage which could have been attributed to her parents' presence in the courtroom, RT 522-23, this did not harm petitioner. To the contrary, petitioner's counsel used the testimony to his advantage by arguing to the jury that Jane Doe was not believable because she had lied about her drug use as well as other matters. RT 807. Petitioner's counsel also suggested to the jury that Jane Doe might have lied about the entire incident because she could have thought that it would be easier for her parents to accept that her husband had abused her in a jealous rage rather than to accept that she (and her husband) had led a lifestyle contrary to her parents' exemplary lifestyle. RT 812-13. *See Bell v. Lockhart,* 741 F.2d 1105, 1108-09 (8th Cir. 1984) (concluding that defense counsel acted reasonably in deciding not to file a motion for a directed verdict in light of the potential increase in exposure to the defendant).

### 5.    Cross-examination Of Jane Doe And Detective Balesteri

Lastly, petitioner claims that his counsel rendered ineffective assistance by not effectively

cross-examining two prosecution witnesses, Jane Doe and Detective Balesteri. With regard to Jane Doe, petitioner claims that his counsel failed to question Jane Doe about her prior criminal history and her statement to the investigator about "having sex." Exh. 63 attached to Exh. 8. Petitioner's counsel did not perform deficiently by not questioning Jane Doe about these matters. First, there was no evidence that Jane Doe had committed any offenses which could have been introduced for impeachment purposes. Jane Doe's statement to the investigator corroborated this fact as she explained to him that petitioner had lied about her having a criminal history. Exh. 63 attached to Exh. 8.

Second, Jane Doe's statement to the investigator that she might have "had sex" with petitioner did little to impeach Jane Doe. She made no indication at that time that the sex was consensual. In fact, when Jane Doe made the statement to the investigator, she tied the sexual intercourse incident to the forcible object penetration incident (Exh. 44 attached to Exh. 8), making it inferrable that she did not consent to either act, a statement that was consistent with her trial testimony, and thus, would have had no impeachment value. Furthermore, petitioner's counsel effectively cross-examined Jane Doe on the consent issue, including using her preliminary hearing testimony to impeach her. *See* RT 509-10.

With regard to Detective Balesteri, petitioner claims that his counsel failed to impeach the detective with his direct examination testimony, in which he had indicated that he could not recall whether he had found keys and operational phones in the apartment, even though there was evidence that he had. Petitioner's counsel performance was adequate in this regard.

During direct examination about the phones, Detective Balesteri testified that he had found a cordless phone without a battery, but found a battery a few feet away. RT 556. On cross-examination, petitioner's counsel elicited this same testimony, as well as the fact that the detective had not attempted to put the battery in the phone to determine if it was operational, RT 566, 568, or determined whether the fax machine he had found inside the apartment was operational. RT 566; *see also* RT 598-99 (Detective Widener's testimony that no one checked the fax machine to determine if it worked). In addition, Detective Balesteri testified that he had failed to mention in his police report whether he had found any other phones and that he could not recall if there were

1   other phones inside the apartment.  RT 567.  Petitioner's counsel then proceeded to impeach

2   Detective Balesteri.  Specifically, he elicited Detective Widener's testimony that Detective Balesteri

3   had reported to him that he had found a working phone in the bedroom of the apartment.  RT 597-

4   98.

5          With regard to the key evidence, petitioner's counsel elicited Detective Balesteri's

6   testimony on cross-examination that, inside the apartment, he had found a key on the table behind

7   the computer and confirmed that it fit the dead bolt.  RT 566-567.  Because Detective Balesteri

8   testified consistently with his police report (Exh. 64 attached to Exh. 8), and his testimony

9   effectively undermined Jane Doe's claim that she had been unable to escape from the apartment

10  because she had no key, it was unnecessary for petitioner's counsel to further question the detective

11  about the key found inside the apartment.  In sum, it is evident that petitioner's counsel performed

12  adequately by effectively cross-examining and impeaching Detective Balesteri and Jane Doe.

13      **C.  There Was No Prejudice**

14         Even assuming, arguendo, that the performance of petitioner's counsel was deficient, there

15  was no prejudice.  *Brecht v. Abrahamson*, 507 U.S. at 637-38; *see Fry v. Pliler*, 127 S.Ct. at 2327

16  (the *Brecht* standard of review should be used for all federal habeas cases regardless of whether the

17  state court applied *Chapman v. California*, 386 U.S. 18 (1967); *Bains v. Cambra*, 204 F.3d 964, 976-

18  77 (9th Cir. 2000) (even if state court does not have occasion to apply the test for assessing prejudice

19  applicable under federal law, the *Brecht* standard applies uniformly in all federal habeas corpus

20  cases under § 2254); *see Henry v. Estelle*, 33 F.3d 1037, 1041 (9th Cir. 1993) (*Brecht* harmless error

21  standard applies to constitutional magnitude, trial type errors, and is the equivalent of harmless error

22  standard under California law), *rev'd sub nom on other grounds in Duncan v. Henry*, 513 U.S. 364,

23  366 (1995).  This is so for the following reasons.

24         First, although neither an expert nor the defense investigator testified, much of the

25  evidence which petitioner claims was critical to his defense was introduced at trial.  For example,

26  the jury was well aware that Jane Doe had not been completely forthcoming about her own drug use

27  based on her evasive and inconsistent answers during the trial.  RT 339-41, 522-23, 529.  Also, the

28  lack of fingerprint evidence with respect to the knives was introduced into evidence when

1   petitioner's trial counsel asked Detective Balesteri if he had processed any of the knives for

2   fingerprints, and the detective responded "no." RT 561. Petitioner's counsel also introduced

3   evidence that the state had failed to determine whose blood it was in the apartment. Specifically,

4   petitioner's trial counsel asked Detective Balesteri whether he had gotten any tests result regarding

5   the type of blood from the samples that he had collected in the apartment, and the detective

6   responded, "No. I didn't do that test." RT 564. Detective Widener further confirmed that no blood

7   tests had be done on the blood samples. RT 595.

8       Moreover, there was overwhelming evidence to support the jury's verdicts. Jane Doe

9   immediately and consistently reported, with minor exceptions, to numerous people that petitioner

10  had repeatedly assaulted her and held her against her will inside their apartment over a four-day

11  period. CT 17-80; RT 549-51, 573-74, 591. At trial, Jane Doe described how petitioner repeatedly

12  locked her inside the apartment, took the apartment keys, disabled the phones, and monitored her

13  every call. RT 299-300, 303-06. She also described the assaults in detail and how petitioner had

14  threatened to kill her multiple times. RT 260-329. The evidence that the police found inside the

15  apartment immediately after the ordeal, as well as petitioner's own statements, corroborated Jane

16  Doe's statements. *See, e.g.,* RT 551, 557, 560-61 (knives inside the apartment), 551, 561-64 (blood

17  in various areas of the apartment), 555 (Chloroseptic bottle), 556 (disabled phone), 557, 604 (bleach

18  spots on Jane Doe's shirt), 557 (Jane Doe's ripped panty hose), 563-64, 604 (blood on Jane Doe's

19  shirt), 624 (petitioner's testimony that he hit Jane Doe's ear causing it to swell), 631 (petitioner's

20  testimony that he "twirled a scarf around [Jane Doe's] neck"), 641 (petitioner's testimony that he

21  accidently hit Jane Doe with the Chloroseptic bottle).

22      Jane Doe's shaken state and numerous injuries also supported her claims. RT 539-40,

23  544-45, 549, 571, 574-78, 591. On February 8, 2003, when Jane Doe was finally able to escape

24  from the apartment, she ran screaming to the apartment manager and her assistant, begging them for

25  help. RT 539-40, 544. The managers did not initially recognize Jane Doe although they knew her.

26  RT 541, 544. The apartment managers noticed that Jane Doe could hardly breathe, her face was

27  swollen, and the managers could "barely hear" her voice as she (Jane Doe) was attempting to ask

28  them for help. RT 540, 545. Jane Doe was hysterical and yelled, "He's after me" so the assistant

1   manager helped Jane Doe to hide in the laundry room closet and then locked the door to keep her

2   safe.  RT 544.  When the first police officer arrived on the scene, he found Jane Doe hiding in the

3   laundry room closet.  Jane Doe was still scared and hysterical.  She had discoloration around her

4   neck and eyes, a swollen face, and a "raspy, wheezing voice."  RT 549.  When Jane Doe was finally

5   taken to the hospital, a nurse documented her multiple injuries and a doctor performed a procedure

6   on her ear to repair the damage.  RT 571, 574-78.  As of trial, Jane Doe still suffered some hearing

7   loss.  RT 531.

8         There was also overwhelming evidence that petitioner had beaten Jane Doe in the past,

9   RT 334–38, 614-15, and that petitioner had exhibited a consciousness of guilt with respect to his

10   current offenses.  Specifically, petitioner refused to allow Jane Doe to get treatment at Community

11   Hospital and told her to tell hospital staff that "someone else" had injured her, if she went.  RT 308-

12   09.  Petitioner also decided not to return to the apartment once he realized that Jane Doe had

13   escaped.  RT 651.  There was also overwhelming evidence that, after his arrest, petitioner had

14   violated the restraining order multiple times, RT 330-34, and he raised no defense to those charges.

15   RT 813, 816.  In light of this overwhelming evidence pointing to petitioner's guilt, any error was

16   harmless.  Therefore, petitioner's claim of ineffective assistance of counsel should be rejected.

17                                                   **III.**

18   **PETITIONER'S CONSECUTIVE SENTENCES DID NOT VIOLATE
     HIS RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH**

19   **AMENDMENTS**

20         Next, petitioner contends that his consecutive sentences violated his rights under the Fifth,

21   Sixth, and Fourteenth Amendments because the facts relied upon by the trial court to impose

22   consecutive sentences were neither admitted by him nor found true beyond a reasonable doubt by

23   a jury.  Petition at 6-6b.  We disagree.  The California courts' rejection of petitioner's claim was

24   not contrary to, or an unreasonable application of, United States Supreme Court precedent.  28

25   U.S.C. § 2254(d).  Moreover, any error was harmless.

26     **A.   Relevant Background**

27         On July 1, 2004, at petitioner's sentencing hearing, the prosecutor stated that the court was

28   obligated to impose mandatory life sentences based upon the two prior strike convictions, and urged

the court to impose consecutive terms on counts two, three, five, and nine through twelve.  (Sent. RT 9-10; *see* CT 388-91 [People's Sentencing Memorandum].)  With respect to counts nine through twelve, the prosecutor stated that the crimes constituted four different sexual assaults on the victim, and that petitioner had had time to reflect between each sexual act before he decided to commit the next one.  Sent. RT 10; *see* CT 388-90 (People's Sentencing Memorandum).  Petitioner's counsel objected to the consecutive sentences on counts two, three, and five, claiming that they constituted the same conduct as that in counts six, seven, and eight.  Defense counsel urged the court to  impose a 30-years-to-life term on count five (the stabbing incident) and concurrent terms on the remaining counts, arguing that it was "all one transaction" and did not occur on "separate occasions."  Sent. RT 10-12, 16.

The trial court imposed four consecutive terms of 25 years to life on counts nine through twelve, stating in relevant part:

> [T]he reason I am making each of those counts consecutive is because I find under Penal Code section 667.6(d) that each act was a separate act.  The defendant did have ample time and opportunity to reflect upon his actions, and nevertheless did resume the assaultive behavior.  That each act . . . does represent a different sexual act, each required different positions or different tools or objects, and two of the four acts occurred in the front room.

Sent. RT 13-14.

The trial court also sentenced petitioner to consecutive terms of 29 years to life on count two, 25 years to life on count three, and 30 years to life on count five.  CT 371-73.  In imposing consecutive terms on counts two, three, and five, the trial court stated, in relevant part:

> I believe that although it was a single victim involved, they were separate occurrences.  The defendant had an opportunity to reflect between the occurrences, and in fact, a number of hours transpired between . . . [¶] . . . Count 2 - - the injury to the ear, and the scarf strangulation[,] Count 3, which occurred in the early morning hours of February 5; and again, the knife wound that occurred sometime late February 5th or early February 6th.  They're each separate occurrences, they each resulted in very serious physical injur[ies], and for that reason the sentences will be consecutive.

Sent. RT 15-16.

On appeal, petitioner contended that the trial court erred by imposing consecutive terms on his multiple counts of conviction because the court's findings at sentencing were not admitted by him nor proved to a jury beyond a reasonable doubt in violation of *Blakely v. Washington,* 542

1    U.S. 296 (2004).  Exh. 3 at 24-37.

2            On June 20, 2005, while petitioner's state appeal was pending, the California Supreme

3    Court, in *People v. Black* 35 Cal.4th 1238 (*Black I*) (2005), held that "the judicial fact-finding that

4    occurs when a judge exercises discretion to impose . . . consecutive term[s] under California law

5    does not implicate a defendant's Sixth Amendment right to a jury trial." *Id.* at 1244.  *Black I* also

6    cited with approval *People v. Groves,* 107 Cal.App.4th 1227, 1230-31, which held that the

7    imposition of full consecutive sentences under section 667.6(d) did not violate a defendant's right

8    to a jury trial.  *Black I,* 35 Cal.4th at 1263, n. 19.

9            On December 16, 2005, the California Court of Appeal rejected petitioner's claim, stating:

10           Even if defendant had not waived this argument by failing to raise it at his
     sentencing, which took place after the *Blakely* decision was filed, the California Supreme

11   Court recently rejected the claim that *Blakely* entitles a defendant to a jury trial on any
     facts that support the trial court's decision to impose consecutive terms.  The Court

12   concluded that "the judicial fact-finding that occurs when a judge exercises discretion to
     impose . . . consecutive term[s] under California law does not implicate a defendant's

13   Sixth Amendment right to a jury trial."  (*People v. Black* (2005) 35 Cal.4th 1238, 1244
     [(*Black I*)].)   *Black* is dispositive of defendant's *Blakely* challenge.   Accordingly,

14   defendant's contention is not well taken.  (*Auto Equity Sales, Inc. v. Superior Court*
     (1962) 57 Cal.2d 450, 455.)

15

16           On January 20, 2006, petitioner filed a petition for review in the California Supreme Court

17   (S140531).  Exh. 6.  On February 22, 2006, the California Supreme Court issued its order, stating:

18           Petition for review denied without prejudice to any relief to which defendant might
     be entitled after the United States Supreme Court determines in *Cunningham v.*

19   *California*, No. 05-6551, the effect of *Blakely v. Washington* (2004) 542 U.S. 296 and
     *Uniteds States v. Booker* (2005) 543 U.S. 220 [125 S.Ct. 738, 160 L.Ed. 2d 621], on

20   California law.

21   Exh. 7.

22   **B.    The California Courts Did Not Unreasonably Apply United States Supreme**
          **Court Precedent In Denying Petitioner's Claim**

23

24           Petitioner's claim should be rejected because there is no Supreme Court holding regarding

25   the imposition of consecutive sentences.  In *Cunningham v. California*, 549 U.S. 270, 127 S. Ct.

26   856, 166 L. Ed. 2d 856 (2007), the Supreme Court held that California's procedure for imposing an

27   *upper term* violates the Sixth Amendment right to a jury trial because it exposes a defendant to a

28   sentence greater than the statutory maximum based on facts found by the trial court by a

1    preponderance of the evidence rather than by the jury beyond a reasonable doubt.  The Court found

2    that the statutory maximum term under the Determinate Sentencing Law (DSL) for Sixth

3    Amendment purposes is the middle term, which is the longest sentence a trial court may impose

4    exclusively on the basis of facts.

5         *Cunningham* rejected the California Supreme Court's opinion in *Black I* only on the issue

6    of upper term sentencing.  *See Cunningham*, 127 S. Ct. at 868-71 (rejecting the California Supreme's

7    Court's decision in *Black I*, which held that California's upper term procedure was constitutional).

8    No consecutive sentencing issue was raised in *Cunningham* and the case did not even involve

9    multiple sentences.  No language in *Cunningham* suggests that the Court would intend to apply its

10   holding to a decision of how a judge aggregates the punishment for multiple offenses.  *Apprendi v.*

11   *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)  and *Blakely*, 542 U.S. 296,

12   as well as *Cunningham*, do not apply to the imposition of consecutive sentences.  These cases were

13   concerned with the finding of a fact "that increases the penalty for a crime beyond the prescribed

14   statutory maximum." *Cunningham*, 127 S. Ct. at 864; *Blakely*, 542 U.S. at 301; *Apprendi*, 530 U.S.

15   at 490.  The California Supreme Court's decision in *Black I* regarding consecutive sentencing is,

16   therefore, not contrary, or an unreasonable application of, United States Supreme Court precedent

17   because there is no such precedent as to the issue of consecutive sentencing.

18        Notably, the United States Supreme Court has held that a trial court may consider

19   sentencing factors in finding that a mandatory minimum applies to a defendant's sentence.

20   *McMillan v. Pennsylvania*, 477 U.S. 79, 82 (1986).  The United States Supreme Court has indicated

21   that there is nothing in the common law to suggest that it is "impermissible for judges to exercise

22   discretion—taking into consideration various factors relating both to offense and offender—in

23   imposing a judgment within the range prescribed by statute, and that "judges in this country have

24   long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual

25   case." *Apprendi,* 530 U.S. at 481, original in italics; *see also United States v. Booker,* 125 S.Ct. at

26   750.  *Apprendi* itself explained that the only relevant issue is the sentence for a single particular

27   crime, not the aggregate effect of the defendant's multiple sentences. *Apprendi,* 530 U.S. at  474.

28   Thus, as long as the sentence for each count is within the statutory maximum for that conviction,

*McMillan*, *Apprendi*, *Blakely*, and *Cunningham* do not forbid consecutive sentencing on multiple counts.

All the federal circuits considering the issue have rejected *Apprendi* challenges to consecutive sentencing. *United States v. Buckland*, 289 F.3d 558, 570-71 (9th Cir. 2002) (en banc); *United States v. Hicks*, 389 F.3d 514, 532 (5th Cir. 2004); *United States v. Pressley*, 345 F.3d 1205, 1213 (11th Cir. 2003); *United States v. Harrison*, 340 F.3d 497, 500 (8th Cir. 2003); *United States v. Lafayette*, 337 F.3d 1043, 1049-50 (D.C. Cir. 2003); *United States v. Hernandez*, 330 F.3d 964, 982 (7th Cir. 2003); *United States v. Chorin*, 322 F.3d 274, 278-79 (3rd Cir. 2003); *United States v. Lott*, 310 F.3d 1231, 1242-43 (10th Cir. 2002); *United States v. Campbell*, 279 F.3d 392, 401-02 (6th Cir. 2002); *United States v. Feola*, 275 F.3d 216, 220 & n. 1 (2d Cir. 2001).[5/] Also, at least six other state supreme courts have also found that the *Apprendi* line of cases does not impact their consecutive sentencing laws. *State v. Kahapea*, 141 P. 3d 440, 452 (Haw. 2006); *State v. Cubias*, 120 P. 3d 929, 932-33 (Wash. 2005); *State v. Higgins*, 821 A.2d 964, 975-76 (N.H. 2003); *State v. Bramlett*, 41 P.3d 796, 797-98 (Kan. 2002); *Hall v. State*, 823 So.2d 757, 764 (Fla. 2002); *People v. Wagener*, 752 N.E.2d 430, 440-43 (Ill. 2001). *Cunningham* did not alter the analysis set out in *Black I* and these other cases.

In sum, the decisions of the California courts rejecting this claim are entitled to deference because they are not contrary to, nor an unreasonable application of, United states Supreme Court precedent. Accordingly, this Court should reject petitioner's constitutional challenge to the imposition of consecutive sentences.

## C. There Was No Prejudice

Even assuming there was error, petitioner was not prejudiced. *Brecht v. Abrahamson*, 507 U.S. at 637-38; *see Fry v. Pliler*, 127 S.Ct. 2321, 2327 (the *Brecht* standard of review should be used for all federal habeas cases regardless of whether the state court applied the *Chapman* standard); *see*

---

5. The Fourth Circuit, although not squarely addressing the issue, has implicitly approved this reasoning by analogizing to the Second Circuit's resolution in *United States v. White*, 240 F. 3d 127, 135 (2d Cir. 2001). *United States v. Angle*, 254 F.3d 514, 518-19 (4th Cir. 2001) (reasoning that under *Apprendi,* the sentence on another count does not affect whether the sentence on this count is error, but it can affect whether the error is harmless).

1   *also Henry v. Estelle*, 33 F.3d at 1041 (*Brecht* harmless error standard applies to constitutional

2   magnitude, trial type errors, and is the equivalent of harmless error standard under California law).

3   The Supreme Court has held that a *Blakely*-type error in failing to submit an aggravating

4   circumstance to a jury is subject to harmless error analysis. *Washington v. Recuenco*, 548 U.S. 212,

5   126 S. Ct. 2546, 2553, 165 L.Ed. 2d 466 (2006).

6       Here, any error was harmless since the trial court's reasons for imposing consecutive

7   sentences undoubtedly would have been found by a jury beyond a reasonable doubt as there was

8   strong evidence that the four different sexual offenses against Jane Doe occurred on "separate

9   occasions." Petitioner made different statements and gave different directions to Jane Doe before

10  committing each of the sexual acts. After the anal sex (count twelve) and before the sexual

11  intercourse (count ten), petitioner ordered Jane Doe to lie down on the living room floor and "told"

12  her they were going to have sex. RT 292, 527. Petitioner then asked Jane Doe to orally copulate

13  him (count nine), and Jane Doe complied with his request because she felt she had no choice. RT

14  292-93, 509-10. Then, just before penetrating Jane Doe's anus with the bottle stopper (count

15  eleven), petitioner told Jane Doe that he was "going to put it up there." RT 294-95.

16      Each sexual act was different from the previous one, requiring petitioner and Jane Doe to

17  position their bodies differently each time. RT 291-95. For example, after petitioner completed the

18  anal sex, petitioner forced Jane Doe to lie down on the floor so he could penetrate her vagina with

19  his penis. RT 292. Following the rape, either petitioner moved his penis to Jane Doe's mouth or

20  Jane Doe was forced to move her mouth to petitioner's penis so she could orally copulate him. RT

21  292-93. After the oral copulation, petitioner got behind Jane Doe to penetrate her anus with the

22  bottle stopper. RT 293-95. Also, it is inferrable from the record, that petitioner, at some point prior

23  to his object penetration of Jane Doe in the living room, had to retrieve the bottle stopper from the

24  bedroom dresser. RT 293-95. Based on the foregoing, it is evident that petitioner had ample

25  opportunities to reflect upon his actions between each of the sexual assaults.

26      In addition, there was overwhelming evidence that counts two, three, and five constituted

27  separate occurrences. The knifing incident was separated by time and place from the strangling and

28  hitting incidents, giving petitioner more than sufficient time to reflect before committing a new

Memorandum of Points and Authorities - *Hill v. Almager* - C 07-3229 JSW (PR)

1  offense against the victim.  RT 261, 263, 271-72, 311, 317-18.  Also, each offense constituted a

2  separate act of violence, resulting in different physical injuries to the victim.  RT 271-72, 283-90,

3  318-23, 348-53, 511.  Moreover, there was evidence beyond a reasonable doubt that petitioner had

4  suffered two prior strike convictions.  RT 1013-24.  It was also evident that petitioner had served

5  prior prison terms, was on probation at the time of his current offenses, and his prior convictions as

6  an adult were both numerous and of increasing seriousness.  CT 341-42, 347-48.

7          In sum, a jury would surely have found these factors true if it had been asked to render a

8  verdict on them, and consecutive terms would have been authorized based on any one of them.

9  *People v. Osband*, 13 Cal.4th 622, 729-30 (1996).  Consequently, any error was harmless.  *Brecht*

10 *v. Abrahamson*, 507 U.S. at 637-38.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### CONCLUSION

2      For the foregoing reasons, respondent respectfully requests that the order to show cause

3  be discharged, the petition be denied, and the proceedings be terminated.

4      Dated:  June 26, 2008

5                          Respectfully submitted,

6                          EDMUND G. BROWN JR.
                           Attorney General of the State of California

7                          DANE R. GILLETTE
                           Chief Assistant Attorney General

8
                           GERALD A. ENGLER
9                          Senior Assistant Attorney General

                           GREGORY A. OTT
10                         Deputy Attorney General

11

12                         /s/ Ann P. Wathen
                           ANN P. WATHEN
13                         Deputy Attorney General

14                         Attorneys for Respondent

15  20118628.wpd
    SF2007403010

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities - *Hill v. Almager* - C 07-3229 JSW (PR)