IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RONNELL RAY HILL,

          Petitioner,

   vs.

V.M. ALMAGER, Warden,

          Respondent.

No. C 07-3229 JSW (PR)

ORDER DENYING PETITION
FOR A WRIT OF HABEAS
CORPUS AND CERTIFICATE
OF APPEALABILITY

**INTRODUCTION**

Petitioner, Ronnell Ray Hill, currently incarcerated at California State Prison-Los Angeles in Lancaster, California, filed this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner alleges ineffective assistance of trial counsel in violation of the Sixth Amendment and that his consecutive sentences for multiple crimes violates his constitutional rights because the trial court relied on facts not admitted by him nor found true beyond a reasonable doubt by a jury in making the sentencing determination. This Court found that the petition, when liberally construed, stated cognizable federal claims and ordered Respondent to show cause why a writ of habeas corpus should not be granted. Respondent filed an answer and Petitioner has filed a traverse. For the reasons discussed below, the petition is denied on the merits.

**PROCEDURAL BACKGROUND**

On April 21, 2004, Petitioner was convicted by a jury in Monterey County Superior Court of four counts of inflicting corporal injury on a spouse (Cal. Penal Code § 273.5(a)), three counts of aggravated assault (Cal. Penal Code § 245(a)(1)), forcible oral copulation (Cal. Penal Code § 288a(c)(2)), spousal rape (Cal. Penal Code § 262(a)), forcible object penetration (Cal. Penal Code § 289(a)(1)), forcible sodomy (Cal. Penal Code § 286(c)(2)), two counts of making criminal threats (Cal. Penal Code § 422), false imprisonment (Cal. Penal Code §§ 236-37), and four misdemeanor counts of criminal contempt/disobedience of a protective order (Cal. Penal Code § 166(c)(1)).  In a bifurcated proceeding, the trial court determined that Petitioner had two prior strike convictions.  On July 1, 2004 the trial court sentenced Petitioner to 29 years to life on count two, 25 years to life on count 3, 30 years to life on count 5, and four 25 years to life terms on counts 9 through 12, and the court ordered that the terms run consecutively, for a total of 184 years in state prison.

On February 1, 2005, Petitioner appealed his conviction to the California Court of Appeal which affirmed his conviction on December 16, 2005.  On January 20, 2006, Petitioner filed a petition for review in the California Supreme Court, which was denied on February 22, 2006.  Petitioner filed a state habeas petition in the California Supreme Court which was also denied on April 18, 2007. On June 6, 2007, Petitioner timely filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254.

**FACTUAL BACKGROUND**

The facts underlying the charged offenses, as found by the California Court of Appeal, are summarized in relevant part, as follows:

> Defendant's wife returned home around 10 p.m. on Tuesday evening, February 4, 2003, after being out and was confronted by

defendant in the parking lot of their apartment complex. Very angry, defendant accused his wife of having an affair. An argument ensued, continuing inside their apartment. During the argument, defendant ripped the crotch of her stockings and pulled them down. He inserted his fingers inside her vagina and asked her who she had been having sex with. Defendant then hit the side of her face, injuring her ear and causing her to fall in pain. Defendant proceeded to strangle her with his hands and a scarf until she began to shake and lost consciousness. Later that night, when she had regained consciousness, defendant threw a medicine bottle at her, hitting her in the face.

Also that night, defendant forced his wife to engage in a number of sexual acts, including intercourse, oral copulation, sodomy and forcible object penetration. Defendant's wife testified that over the course of their seven-year relationship, they had sometimes had fights that were followed by consensual sexual intercourse. However, she testified that on this occasion she did not consent, but had participated because she was afraid defendant would kill her and she felt she had no choice.

Some time later, the defendant made his wife accompany him to purchase drugs. When they were out, she did not run away because she was afraid of what he would do if he caught her; and when in the apartment she could neither escape nor call for help because he locked her in and disabled all of the phones.

Over the course of the four-day imprisonment, defendant choked his wife three more times. During one of these incidents, defendant told his wife he would kill her and get rid of her body and she blacked out again, regaining consciousness only to see defendant searching for lighter fluid. He told her the lighter fluid was to kill her and burn her. When he couldn't find lighter fluid, he threw bleach on her and tried to light her on fire, but the bleach on her clothing did not ignite. Defendant then grabbed a knife and stabbed his wife 40 or 50 times leaving wounds which healed without the need for stitches, although some left scars.

Saturday afternoon, when defendant left the apartment, he left the door unlocked and his wife was able to escape and run for help. After the police arrived, they observed her injuries and took a report. They took defendant's wife to the hospital where she received treatment and underwent a sexual assault exam. The sexual assault nurse concluded that her injuries were consistent with her version of events.

Shortly thereafter, the defendant's wife sought and obtained a restraining order against defendant precluding him from having any contact with her. Despite the order, defendant wrote five letters to his wife and called her once on the telephone...

*People v. Hill*, No. SS031004, 2005 WL 3445484 (Cal. App. 6th Dist., Dec. 16,

3

2005), at *1-2.  (*footnotes omitted)

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for habeas relief "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* at § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-12 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.

In deciding whether the state court's decision is contrary to, or an unreasonable application of clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a Petitioner's claim in a reasoned decision.  *LaJoie v. Thompson,* 217 F.3d 663, 669 n.7 (9th Cir. 2000).  If the state court only considered state law, the federal court must ask

4

whether state law, as explained by the state court, is "contrary to" clearly established governing federal law.  *See*, e.g., *Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001); *Hernandez v. Small*, 282 F.3d 1132, 1141 (9th Cir. 2002)(state court applied correct controlling authority when it relied on state court case that quoted Supreme Court for proposition squarely in accord with controlling authority).

However, the standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim.  In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable.  *See Plascencia v. Alameida*, 467 F.3d 1190, 1197-98 (9th Cir. 2006); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Greene v. Lambert*, 288 F.3d 1081, 1088 (9th Cir. 2002); *Bailey v. Newland*, 263 F.3d 1022, 1028 (9th Cir. 2001); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law.  *Plascencia*, 467 F.3d at 1198; *Himes*, 336 F.3d at 853; *Delgado*, 223 F.3d at 982; *accord Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004).

The federal court need not otherwise defer to the state court decision under AEDPA: "A state court's decision on the merits concerning a question of law is, and should be, afforded respect.  If there is no such decision on the merits, however, there is nothing to which to defer."  *Greene*, 288 F.3d at 1089.  In sum, "while we are not required to defer to a state court's decision when that court gives us nothing to defer to, we must still focus primarily on Supreme Court

cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law." *Fisher v. Roe*, 263 F.3d 906, 914 (9th Cir. 2001). *But cf. Brazzel v. Washington*, 491 F.3d. 976, 981 (9th Cir. 2007) (noting that when state court reaches decision on merits but does not supply reasoning for its decision, federal court reviews the record to determine if there was clear error); *Larson v. Palmateer*, 515 F.3d 1057, 1062 (9th Cir. 2008) (quoting *Brazzel*, 491 F.3d at 981, for rule that if "state court reaches the merits without providing reasoning for us to review, however, 'we independently review the record to determine whether the state court clearly erred in its application of Supreme Court law.'")

## DISCUSSION

In this petition for a writ of habeas corpus, Petitioner alleges ineffective assistance of counsel based on the failure of his defense attorney to: (1) raise a viable defense, (2) call the defense investigator to impeach Jane Doe's testimony, (3) call an expert witness to testify concerning the results of the sexual assault exam, the lack of testing of the blood left in the apartment, and the lack of forensic examination of the bottle stopper inserted into Jane Doe's rectum, (4) exclude from the courtroom Jane Doe's parents even though it was possible that their presence tainted Jane Doe's testimony, and (5) effectively cross-examine Jane Doe and Detective Balesteri.  Petitioner also alleges that his consecutive sentence violates his Fifth, Sixth and Fourteenth Amendment rights because the facts relied upon by the court to determine Petitioner's sentence were neither admitted by him nor found true beyond a reasonable doubt by a jury.

I.     **Ineffective Assistance of Trial Counsel.**

      A.     **Legal Standard**

A claim of ineffective assistance of counsel is cognizable as a claim of

denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see Williams (Terry) v. Taylor*, 529 U.S. 362, 404-08 (2000). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Strickland*, 466 U.S. at 686.

In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, Petitioner must establish two things. First, *Strickland* requires Petitioner to show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687. The defendant must show that counsel's representation fell below an objective standard of reasonableness. *See id.* at 688. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689.

Second, Petitioner must establish that he was prejudiced by counsel's deficient performance and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

It is unnecessary for a federal court considering a habeas ineffective

1    assistance claim to address the prejudice prong of the *Strickland* test if the

2    Petitioner cannot even establish incompetence under the first prong.  *See*

3    *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).  The burden to prove

4    prejudice rests with the Petitioner.  *Id.* at 693.

5        An attorney's tactics at trial are given deference, and differences of

6    opinion between the criminal defendant and their trial attorney with regards to

7    trial tactics does not by itself constitute ineffective assistance.  *See United States*

8    *v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981).  Tactical decisions deserve deference

9    when (1) counsel bases their trial conduct on strategic considerations, (2) counsel

10   makes an informed decision based upon investigation and (3) the decision

11   appears reasonable under the circumstances.  *Sanders v. Ratelle*, 21 F.3d 1446,

12   1456 (9th Cir. 1994).  Under 28 U.S.C. § 2254, whether or not counsel's actions

13   were tactical is a question of fact under § 2254(d)(2) and whether counsel's

14   actions were reasonable is considered a question of law under § 2254(d)(1).

15       Furthermore, the Supreme Court does not require counsel to pursue every

16   nonfrivolous claim or defense regardless of its merit, viability or realistic chance

17   of success, so abandonment of a defense that has "almost no chance of success"

18   is reasonable even if there is "nothing to lose" by preserving the defense.

19   *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419-22 (2009).  Counsel also need not

20   file motions that he knows to be meritless on the facts and in law, such that

21   failure to raise a meritless motion is not ineffective assistance of counsel.  *Juan*

22   *H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005).  Failure by counsel to call an

23   expert witness when the evidence on hand does not warrant it does not amount to

24   ineffective assistance of counsel.  *See Wilson v. Henry*, 185 F.3d 986, 990 (9th

25   Cir. 1999).

26       **B.    Analysis**

27

28                                          8

**1.     Failure to raise a viable defense**

Petitioner claims that his defense counsel was ineffective because counsel failed to raise a viable defense. Petitioner argues in the petition that he disapproved of counsel's use of a "rough sex" defense and also contends defense counsel failed to raise the issue that Jane Doe had started the altercation first by hitting him in the head with a bookend because of her jealousy about his mistress.  Under the first prong of *Strickland*, defense counsel's performance must have been deficient enough to fall below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.  Under *Sanders*, trial counsel is given deference to their use of trial tactics, so long as the tactical decisions are based on strategic considerations and counsel makes the decision based upon an informed and reasonable investigation.  *Sanders*, 21 F. 3d at 1456.

Here, there is no indication that defense counsel acted below the *Strickland*  "objective standard of reasonableness" and defense counsel's actions reflect that he had conducted a reasonable investigation into the available defenses and strategically made the decision to pursue the "rough sex" defense as opposed to a claim of self-defense regarding Jane Doe's alleged assault of Petitioner.  Resp. Exhibit 2, Reporter's Transcript (hereinafter "RT") at 804-05, 10.  Further, defense counsel had no obligation to pursue claims or defenses that have "almost no chance of success," such as the self-defense claim Petitioner raises here. *See Knowles*, 129 S. Ct. at 1419-22.  However, defense counsel did elicit testimony from Petitioner about his defending himself during his altercation with Jane Doe, as well as testimony about her jealousy of Petitioner's mistress. RT at 623-25, 806, 808.

Defense counsel's use of the "rough sex" defense was also a reasonable trial tactic, considering the evidence admitted through Petitioner's testimony that

he had consensual sex with Jane Doe during the four-day period in question combined with eliciting Jane Doe's testimony that she had consented to make-up sex with Petitioner after previous arguments.  RT at 509.  Defense counsel made a strategic decision by arguing that Jane Doe consented to the sexual acts.  There is no indication that counsel's performance with regard to this strategic decision was deficient especially given the wide latitude and deferential treatment given to "objectively reasonable" professional representation.  *See Strickland*, 466 U.S. at 689.

Since there is no indication that defense counsel's decision of which defense to pursue was deficient, there is no need to analyze whether or not there were prejudicial effects under the second prong of *Strickland*.  *See Siripongs*, 133 F.3d at 732, 737.  Petitioner has not established that defense counsel's failure to raise a viable defense constitutes ineffective assistance of counsel.

## 2.    Failure to call a defense investigator as a witness

Petitioner also contends that defense counsel was ineffective by failing to call the defense investigator to impeach Jane Doe's testimony at trial.  Prior to trial, the defense investigator interviewed Jane Doe, eliciting information about her prior relationships that had been abusive, the fact that she "might have had sex" with Petitioner the night of the crimes, and that she had a history of drug abuse.  Resp. Exhibit 8, Petitioner's Petition for Writ of Habeas Corpus, California Supreme Court at Exhibits 44-46, 60-61, 63.

Defense counsel's tactical decision not to call the defense investigator to impeach Jane Doe on her prior inconsistent statements concerning her previous abusive relationships was a reasonable strategic decision based on adequate investigation, as testimony elicited from the defense investigator would have been found irrelevant to Petitioner's case.  Petitioner has not established the

relevance of evidence about Jane Doe's previous abusive relationships to whether or not defendant committed the crimes of which he was convicted. Further, defense counsel's decision not to call the defense investigator to impeach Jane Doe about her previous drug use and her desire to keep elements of her past a secret from her parents was proper because it would have been cumulative of Jane Doe's testimony during trial on both issues.  RT at 339, 522-23.

Even if Jane Doe's credibility could have been called into question by her prior inconsistent statements about her relationships and her drug use the prejudice prong in *Strickland* would not have been satisfied since there was overwhelming evidence against Petitioner.  The corroborating evidence of Jane Doe's testimony at trial included her consistent medical report, the blood and other items of physical evidence obtained in the apartment, and the testimony of the multiple witnesses who saw Jane Doe shortly after her escape from the apartment.  RT at 539-44.

### 3.     Failure to call an expert witness

Petitioner alleges that his counsel was ineffective because he failed to offer expert witness testimony concerning the results of the sexual assault exam, as well as the failure to test the blood obtained from the apartment and the bottle stopper to prove it had been inserted into Jane Doe's rectum.  The decision whether to call a witness is a tactical decision.  *See Sanders*, 21 F. 3d at 1456. While it is tactical decision, a failure to call an expert witness does not amount to ineffective assistance of counsel in cases where there is no evidence to warrant expert witness testimony. *See Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999).

In this case, calling an expert witness was not warranted in light of the

evidence against Petitioner.  Petitioner has not established how expert witness testimony regarding Jane Doe's medical exam would have been able to refute the concrete findings of the medical exam itself, including photographs, which showed that Jane Doe suffered from evidence of sexual assault as well as other injuries such as stab wounds.  RT at 283-290.  Petitioner has not established how any evidence elicited from a expert witness would not have been cumulative of testimony from the SART nurse elicited by Petitioner's counsel regarding how evidence of the sexual assault and alleged asphyxiation could have resulted from consensual sexual acts.  RT at 584-86.

Petitioner has also failed to establish how calling an expert witness to testify about the lack of forensic testing of the blood found in the defendant's apartment would have contributed to his defense.  Defendant himself admitted that he had stabbed Jane Doe multiple times, though he claimed that the stabbings were accidental.  RT at 640, 652, 656, 664.  There was also no need for an expert witness to testify about the lack of fingerprints on the knife, since the fact that defendant stabbed Jane Doe was not in question.  *Id.*

Petitioner has also failed to establish a claim of ineffective assistance regarding counsel's failure to call an expert witness to testify about the lack  of evidence on the bottle stopper.  The prosecution never sought to have the bottle stopper admitted into evidence and defense counsel mentioned the lack of testing during his closing argument.  RT at 811.

Since there is no indication that defense counsel's performance was deficient with regards to his tactical decision not to call an expert witness about this evidence, there is no need to analyze whether or not there were prejudicial effects under the second prong of *Strickland*.  *See Siripongs*, 133 F.3d at 732, 737.  Petitioner's allegation of ineffective assistance on this basis is unavailing.

### 4.       Failure to exclude Jane Doe's parents from courtroom

Petitioner alleges that his counsel was ineffective because of his counsel's failure to have Jane Doe's parents excluded from the courtroom despite his contention that their presence could taint her testimony.  Counsel is not ineffective if they fail to raise a meritless motion. *Juan H.*, 408 F.3d at 1273. Under California law, the trial court had discretion to remove spectators, but only if they were found by clear and convincing evidence to be "actually engaging in intimidation of the evidence" and there is no such evidence in the record which indicates that Jane Doe's parents were actively engaging in witness intimidation. *See* Cal. Penal Code § 686.2.  Any motion made by defense counsel to exclude Jane Doe's parents as spectators would have been meritless, and thus his failure to raise the motion did not amount to ineffective assistance of counsel and there is no further need to analyze prejudicial effects under the second prong of *Strickland*.  *See Siripongs*, 133 F.3d at 732, 737.

### 5.       Failure to effectively cross-examine Jane Doe and Detective Balesteri

Petitioner alleges that defense counsel was ineffective due to his failure to effectively cross-examine Jane Doe and Detective Balesteri, two prosecution witnesses.  Petitioner argues that on cross-examination, defense counsel failed to question Jane Doe about her prior criminal history or her earlier statements to the investigator about having sex with Petitioner.  Defense counsel would only have been ineffective if his representation fell below an "objectively reasonable" standard of professionalism, and judicial scrutiny of defense counsel's behavior must be highly deferential as there is a wide range of reasonable and acceptable professional conduct.  *See Strickland*, 466 U.S. at 689.

Petitioner has not established that defense counsel was ineffective in cross-examining Jane Doe.  Jane Doe told the defense investigator that Petitioner

had lied about her prior criminal history and Petitioner has failed to establish that Doe had any further criminal history which would have been admissible as impeachment.  See Resp. Exhibit 8 at Exhibit 63.  Defense counsel had also already impeached Jane Doe on her earlier statements of consenting to sexual activity.  RT at 509-510.

Petitioner further contends that on cross-examination, defense counsel failed to impeach Detective Balesteri's testimony with his prior statements that there were keys and working phones in the apartment.  However, the record shows that defense counsel had impeached Detective Balesteri with his prior inconsistent statements about the phones and keys found in the apartment.  RT at 597-598.

Defense counsel's cross-examination of Jane Doe and of Detective Balesteri do not fall beyond the *Strickland* standard of objective unreasonableness.  As such, there is no need to analyze prejudice prong of *Strickland*, and defense counsel was not ineffective.  *See Siripongs*, 133 F.3d at 732, 737.

## II.   Consecutive sentencing claim

Petitioner asserts that the trial court's imposition of consecutive sentences for his convictions amounting to 184 years to life in prison violates his Fifth, Sixth and Fourteenth Amendment rights because the trial court's findings of fact for imposition of consecutive sentences were neither found by the jury beyond a reasonable doubt nor admitted by Petitioner.

### A.   Legal Standard

The Supreme Court has held that facts or findings that are used to increase a sentence beyond its statutory maximum must be submitted to the jury and found beyond a reasonable doubt.  *Apprendi v. New Jersey*, 530 U.S. 466, 488-90

(2000).  The "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather is the maximum he or she could impose without any additional findings.  *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004); *accord Rita v. United States*, 127 S. Ct. 2456, 2466 (2007).

In *Cunningham v. California*, the Supreme Court determined that California's determinate sentencing law (DSL) violated the Sixth Amendment because it authorizes the judge and not the jury to find facts that permit an upper term sentence.  *Cunningham v. California*, 549 U.S. 270, 273 (2007). *Cunningham* did not address the claim raised here regarding the imposition of consecutive sentences based on a trial judge's findings of fact.  However, the Supreme Court has since determined that the application of *Apprendi* and its progeny is limited to sentencing decisions historically reserved for the jury and does not apply to claims regarding consecutive sentencing.  *See Oregon v. Ice*, 129 S. Ct. 711, 717-18 (2009) (declining to extend *Apprendi* to a state's sentencing system that gives judges discretion to determine facts allowing imposition of consecutive or concurrent sentences for multiple offenses, noting that determination of consecutive versus concurrent sentences is traditionally not within the function of the jury).  In *Ice,* the Supreme Court held that states may assign the question of imposing consecutive instead of concurrent sentences to judges instead of juries without violating the Sixth Amendment.  *Id.* at 714-15.

**B.     Analysis**

Petitioner alleges that the trial court, in sentencing him to consecutive

1    sentences, violated his rights as established in *Blakely*.[1]  Petitioner argues that

2    trial court's imposition of consecutive sentences under Cal. Penal Code 667.6(d)

3    violated his Sixth Amendment rights.  However, subsequent to the California

4    Court of Appeal's decision upholding the imposition of consecutive sentences

5    for Petitioner's multiple convictions under *Blakely*, the Supreme Court has

6    decided that the discretion accorded judges under state law to impose

7    consecutive sentences for multiple criminal convictions does not violate the

8    Sixth Amendment right to a jury trial in *Ice*.  129 S. Ct. 711, 714-15.  Therefore,

9    the state court's finding that the trial judge did not violate Petitioner's Sixth

10   Amendment rights when he implemented consecutive sentencing for separate

11   offenses and that *Blakely* is inapplicable is not contrary to, or an unreasonable

12   interpretation of, established Supreme Court precedent.

13                          **APPEALABILITY**

14        The federal rules governing habeas cases brought by state prisoners have

15   recently been amended to require a district court that denies a habeas petition to

16   grant or deny a certificate of appealability in the ruling.  *See* Rule 11(a), Rules

17   Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

18        A petitioner may not appeal a final order in a federal habeas corpus

19   proceeding without first obtaining a certificate of appealability.  *See* 28 U.S.C. §

20   2253(c); Fed. R. App. P. 22(b).  A judge shall grant a certificate of appealability

21   "only if the applicant has made a substantial showing of the denial of a

22   constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate must indicate

23   which issues satisfy this standard.  *See id.* § 2253(c)(3).  "Where a district court

24

25        [1]Although Petitioner states in the petition that he is challenging the trial court's
26   imposition of "upper terms" and consecutive sentences, the consecutive sentences
     challenged here were life sentences, rather than the upper terms under the DSL found to
27   violate the Sixth Amendment in *Cunningham*.

28                                    16

has rejected the constitutional claims on the merits, the showing required to
satisfy § 2253(c) is straightforward: the petitioner must demonstrate that
reasonable jurists would find the district court's assessment of the constitutional
claims debatable or wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000).

For the reasons set forth above, jurists of reason would not find the result
debatable or wrong. A certificate of appealability is DENIED. Petitioner is
advised that he may not appeal the denial of a COA, but he may ask the court of
appeals to issue a COA under Rule 22 of the Federal Rules of Appellate
Procedure. *See* Rule 11(a), Rules Governing § 2254 Cases.

### CONCLUSION

The state courts' denial of Petitioner's claims of ineffective assistance and
violation of his rights to trial by jury are not contrary to or an unreasonable
application of established federal law as determined by the Supreme Court.
Therefore, Petitioner's claims are DENIED. A Certificate of Appealability is
also DENIED. *See* Rule 11(a) of the Rules Governing Section 2254 Cases (eff.
Dec. 1, 2009). The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: July 7, 2010

_____
JEFFREY S. WHITE
United States District Judge

17

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

RONNELL RAY HILL,                                    Case Number: CV07-03229 JSW

                Plaintiff,                    **CERTIFICATE OF SERVICE**

  v.

V.M. ALMAGER et al,

                Defendant.

_____/

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 7, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Ronnell Ray Hill
C.S.P. Los Angeles
P.O. Box 8457
V46928
Lancaster, CA 93539

Dated: July 7, 2010

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk